IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  17-CR-157

GIOVANI HORNEA,

        Defendant.

## PLEA AGREEMENT

The defendant, GIOVANI HORNEA, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a Plea Agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and plead guilty to a one-count Information which charges a violation of Title 18, United States Code, Section 1349 (Conspiracy to Commit Bank Fraud), for which the maximum possible sentence is a term of imprisonment of thirty years, a fine of $1,000,000, a mandatory $100 special assessment, and a term of supervised release of up to five years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms and conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 3 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in Paragraph 1 of this Agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a) Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a bank fraud;

   b) The defendant knew the unlawful purpose of the plan and willfully joined in it; and

   c) The scheme affected a financial institution.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty, including relevant conduct:

   a) Between on or about October 4, 2015, and on or about November 14, 2015, in the Western District of New York and elsewhere, the defendant, GIOVANI HORNEA, did knowingly, willfully and unlawfully combine, conspire and agree with Nicolae Sarbu, and others known and unknown, to execute a scheme and artifice to defraud Bank of America, a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain moneys and funds owned by and under the custody and control of such financial institution by means of false and fraudulent pretenses, representations and promises.

b) It was part of the scheme and artifice that the defendant, GIOVANI HORNEA, and Nicolae Sarbu and others, known and unknown, devised a scheme and artifice to defraud Bank of America, using skimming devices and cameras at automated teller machines (ATMs) whereby bank account information and personal identification numbers (PINs) were recorded without the true account holder's knowledge or authorization and thereafter used to make unauthorized withdrawals of cash from ATMs. A skimmer was a device used to unlawfully record bank account information from a customer's debit card when the card was inserted into an ATM.

c) It was further part of the scheme and artifice that the defendant, GIOVANI HORNEA, and Nicolae Sarbu and others known and unknown, placed, and caused the placement on, and removed and caused the removal of skimming devices and cameras from Bank of America ATMs thereby unlawfully obtaining customers' bank account information and PINs maintained by Bank of America as set forth below:

| Date Skimmer Installed | Date Skimmer Removed | Skimmer Location | Loss |
|---|---|---|---|
| 10/4/15 | 10/4/15 | 1263 Military Road Niagara Falls, NY | $40,409.06 |
| 10/4/15 | 10/4/15 | 1188 Niagara Falls Blvd. Tonawanda, NY | $5,165.00 |
| 10/10/15 | 10/11/15 | 4049 Seneca Street West Seneca, NY | $52,154.38 |
| 10/10/15 10/11/15 | 10/11/15 10/11/15 | 3842 Harlem Road Cheektowaga, NY | $36,331.12 |
| 10/24/15 | 10/25/15 | 3333 W. Henrietta Road Rochester, NY | $13,820.00 |
| 11/14/15 | 11/14/15 | 1107 Butztown Road Bethlehem, PA | $8,386.74 |
| | | Total | $156,266.30 |

d) It was further part of the scheme and artifice that the defendant, GIOVANI HORNEA, and Nicolae Sarbu and others known and unknown, extracted bank account information obtained by the skimmers and thereafter encoded the unlawfully obtained bank account information onto magnetic strips on blank plastic cards and gift cards.

3

e) It was further part of the scheme and artifice that the defendant, GIOVANI HORNEA, and Nicolae Sarbu and others known and unknown, viewed the video recordings obtained from the cameras which had been installed at the bank ATMs referenced above and obtained the PINs associated with the compromised accounts.

f) It was further part of the scheme and artifice that the defendant, GIOVANI HORNEA, and Nicolae Sarbu and others known and unknown, after having unlawfully obtained bank account information and the associated PINs, used the encoded cards and PINs at various ATMs in the Western District of New York and elsewhere to unlawfully withdraw cash from the compromised accounts.

g) The total loss suffered by Bank of America as a result of the fraudulent activity was $156,266.30.

### III. SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6. The government and the defendant agree that Guidelines Section 2B1.1(a)(1) applies to the offense of conviction and provides for a base offense level of **7**.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

7. The government and the defendant agree that the following specific offense characteristics do apply:

   a. §2B1.1(b)(1)(F): the total loss (including relevant conduct) was in excess of $150,000 (namely, $156,266.30) and thus there is a **ten** offense level increase.

4

b.  the **two** level increase pursuant to Guidelines § 2B1.1(b)(2)(A)(i) (offense involved 10 or more victims); and

c.  the **two** level increase pursuant to Guidelines §2B1.1(b)(11)(A)(ii) (offense involved possession or use of authentication feature).

## ADJUSTED OFFENSE LEVEL

8. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction set forth in Count 1 is **21**.

## ACCEPTANCE OF RESPONSIBILITY

9. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two level downward adjustment of Guidelines §3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one level downward adjustment of Guidelines §3E1.1(b), which would result in a total offense level of **18**.

## CRIMINAL HISTORY CATEGORY

10. It is the understanding of the government and the defendant that the defendant's criminal history category is **III.** The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11. It is the understanding of the government and the defendant that, with a total offense level of **18** and a criminal history category of **III**, the defendant's sentencing range would be a term of imprisonment of **33 to 41 months**, a fine of **$10,000 to $1,000,000**, and a period of supervised release of **2 to 5 years.** Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in Paragraph 1 of this agreement.

12. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this Agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this Agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this Plea Agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

13. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this Agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

14. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this Agreement shall be automatically reinstated upon motion of the government, and further agrees not to assert the statute of limitations as a defense to any other criminal offense which is not time barred as of the date of this Agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. ALIEN STATUS

15. The defendant understands that, as a result of the defendant's guilty plea and conviction, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

16. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status as the defendant is not a citizen of the United States. Under federal law, the crime to which the defendant is pleading guilty is a removable offense. The defendant understands that, as a result of the offense to which the defendant is pleading guilty, removal is presumptively mandatory. Removal and other immigration consequences will be the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of a conviction in this case on the defendant's immigration status. The

defendant nevertheless wants to plead guilty regardless of the immigration consequences of a conviction on the defendant's immigration status, even if the consequence is the defendant's automatic removal from the United States.

## VI. GOVERNMENT RIGHTS AND RESERVATIONS

17. The defendant understands that the government has reserved the right to:

(a) provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

(b) respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

(c) advocate for a specific sentence consistent with the terms of this Agreement including the amount of restitution and/or a fine and the method of payment; and

(d) modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this Agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this Agreement, regarding the recommendation or factor.

18. At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 16-M-1057.

## VII. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

19. The defendant understands that the Court must require restitution in an amount of **$156,266.30** to be paid to Bank of America as part of the defendant's sentence

8

pursuant to Sentencing Guidelines Section 5E1.1 and Title 18, United States Code, Section 3663A. The defendant understands that defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

20. The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and Social Security information. The defendant agrees to discuss or answer any questions by the United Sates relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the Agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

21. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

22. The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and condition of this Plea Agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

23. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this Plea Agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this Plea Agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

## VIII. APPEAL RIGHTS

24. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence

imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, Paragraph 11 above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VII of this Agreement.

25. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

26. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, Paragraph 11 above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## X. TOTAL AGREEMENT AND AFFIRMATIONS

27. This Plea Agreement represents the total agreement between the defendant, GIOVANI HORNEA, and the government. There are no promises made by anyone other

than those contained in this Agreement. This Agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
Acting United States Attorney
Western District of New York

BY: _____
MARIE P. GRISANTI
Assistant United States Attorney

Dated: September 8, 2017

I have read this Agreement, which consists of 12 pages. I have had a full opportunity to discuss this Agreement with my attorney, JEFFREY BAGLEY, AFPD. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this Agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this Agreement. I am signing this Agreement voluntarily and of my own free will.

_____
GIOVANI HORNEA
Defendant

Dated: September 8, 2017

_____
JEFFREY BAGLEY, AFPD
Attorney for Defendant

Dated: September 8, 2017

12